MOTLEY RICE LLC
Robert J. McConnell, Esq. (#3888)
321 South Main Street
Providence, Rhode Island 02903
(401) 457-7700

WILENTZ, GOLDMAN & SPITZER,
A Professional Corporation
Brian J. Molloy, Esq., *Pro Hac Vice*, (BJM 7630)
90 Woodbridge Center Drive
PO Box 10
Woodbridge, NJ 07095
(732) 636-8000

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MICHAEL CLOUD, Plaintiff, v. MUSCLETECH RESEARCH AND DEVELOPMENT, INC., CFI WISCONS I, LLC, and CFI of Wisconsin, Inc. d/b/a CENTURY FOODS INTERNATIONAL, Defendants. | Civil Action No. 03-392T |

**DECLARATION OF BRIAN J. MOLLOY IN SUPPORT OF MOTION TO COMPEL**

Brian J. Molloy, Esq., being of full age, under penalty of perjury, declare as follows:

1. I am a shareholder with the law firm of Wilentz, Goldman & Spitzer and submit this declaration in support of

plaintiff Michael Cloud's ("Plaintiff") motion to compel defendants MuscleTech Research and Development, Inc. ("MuscleTech"), CFI Wisconsin, I, LLC, and CFI of Wisconsin, Inc. d/b/a/ Century Foods International ("CFI") (collectively "Defendants") d/b/a/ Century Foods International ("CFI") (collectively "Defendants") to produce discovery, pursuant to Federal Rule of Civil Procedure 37(a).

2. Prior to the expiration of the initial discovery period, Plaintiff requested several documents and relevant information be produced by Defendants. Such documentation and information was initially requested by Plaintiff in his "First Set of Interrogatories" and "First Request for Production of Documents" propounded on Defendants. Moreover, Plaintiff requested that MuscleTech produce similar information and documentation during the deposition of Terry Begley, the Chief Executive Officer of MuscleTech, dated July 21, 2005. Specifically, Plaintiff requested that MuscleTech produce the following categories of information:

(a) Any and all documentation not previously disclosed by Defendants pertaining to any tests of the Nitro-Tech product to determine the presence of prohormones in the Nitro-Tech product, including;

(i) MuscleTech's "Independent Product Testing and Summary" for 2001 - or any like document that discusses or refers to the San Raphael and Chromak testing on the Nitro-Tech product for prohormones;

(ii) MuscleTech's "Independent Product Testing and Summary" for 2002 - or any like document that discusses or refers to the San Raphael and Chromak testing on the Nitro-Tech product for prohormones;

(b) The last known address of Craig Ballantyne and Stuart Lowther;

(c) The name of Craig Ballantyne's counsel; and

(d) Advertising costs and costs for clinical studies for the years 2000 to the present for the Nitro-Tech product specifically, and for all MuscleTech products.

3. As will be detailed below, Plaintiff has conferred with MuscleTech in good faith in an effort to secure the disclosure of such documents and information without court action.

4. To date, however, MuscleTech has failed to produce all such documents and information, and Plaintiff's

motion compelling MuscleTech to produce the requisite discovery should be granted.

**A. MUSCLETECH'S FAILURE TO PRODUCE ITS "INDEPENDENT PRODUCT TESTING AND SUMMARIES" FOR 2001 AND 2002 – OR ANY LIKE DOCUMENTS THAT DISCUS OR REFER TO THE SAN RAPHAEL AND CHROMAK TESTING ON THE NITRO-TECH PRODUCT FOR PROHORMONES**

5. Plaintiff's Document Requests to MuscleTech Numbered 26 through 30 essentially required MuscleTech to produce all documents relating testing of NitroTech, including the production of documents relating to the testing of Nitro-Tech for prohormones.[1]

6. In response, MuscleTech stated that it would produce such documents.

7. In addition to other relevant documents, MuscleTech produced a document entitled "First Quarter Independent Product Testing and Summary, Fiscal Year 2001". This document, however, provided limited information as several portions of the document were redacted.

8. Given the incomplete nature of the document, Plaintiff's deposition of Terry Begley was adversely effected,

---

[1] **Therefore, pursuant to these Requests, Plaintiff requested information from** MuscleTech that would have encompassed San Raphael's and Chromak's testing on **the Nitro-Tech product for prohormones**, which, as per MuscleTech's admission, would have been included in MuscleTech's "Independent Product Testing and Summary for 2001" and MuscleTech's "Independent Product Testing and Summary for 2002".

whereby MuscleTech's counsel affirmatively noted that it would try and provide a "more complete version" of the document.

9. Subsequently, by letter dated July 22, 2005, Plaintiff reminded MuscleTech of its obligations to produce documents requested at Mr. Begley's deposition. Plaintiff then supplemented this letter on August 1, 2005 to specifically ask that MuscleTech produce, as promised, "complete and unredacted copies of the MuscleTech documents entitled: 'First Quarter Independent Prodcut Testing and Summary, Fiscal Year 2001, and Fourth Quarter Independent Product Testing and Summary, Fiscal Year 2002.'" As no documents were produced in response to either of these letters, by letter dated September 7, 2005, Plaintiff again requested the previously promised documents.

10. Despite these repeated requests, MuscleTech only produced limited documentation evidencing the existence of its Independent Product Testing and Summary for the years 2001 and 2002, and has not produced either document either unredacted or in full.

11. Accordingly, by letter dated November 21, 2005, Plaintiff again requested the production of the complete unredacted documents. Indeed, in this letter, Plaintiff informed MuscleTech of the relevance of such documents, reminding MuscleTech of its obligation to produce "document[s]

that discus[] or refer[] to the San Raphael and Chromak testing on the Nitro-Tech product for prohormones."

12. As MuscleTech never supplemented its production, Plaintiff, by email dated December 8, 2005, again informed MuscleTech of its discovery obligations and requested the production of the above documents.

13. To date, Plaintiff has not received such documents from MuscleTech.

**B. MUSCLETECH'S FAILURE TO PROVIDE COMPLETE CONTACT INFORMATION FOR CRAIG BALLANTYNE AND STUART LOWTHER, NAMELY, MUSCLETECH'S FAILURE TO PROVIDE THE CONTACT INFORMATION OF THE ATTORNEY PRESENTLY REPRESENTING STUART LOWTHER**

14. Pursuant to Plaintiff's Interrogatory No. 1, Plaintiff requested that Defendants identify each person "who has knowledge of the facts relating to or bearing upon the subject matter of this lawsuit." In response, MuscleTech identified three specific individuals: (i) Terry Begley; (ii) Stephen Brown; and (iii) Andrew Parshad.

15. During the deposition of Terry Begley, Mr. Begley subsequently discussed other individuals with knowledge, including Craig Ballantyne and Stuart Lowther. Accordingly, at Mr. Begley's deposition, Plaintiff requested the last known address for Messrs. Ballantyne and Lowther, and MuscleTech agreed to produce such information.

16. Immediately after the deposition, by letter dated July 22, 2005, Plaintiff requested of MuscleTech the appropriate contact information for Mr. Ballantyne and Mr. Lowther. As such information was not subsequently provided, by letter dated September 23, 2005, Plaintiff again requested that MuscleTech provide "[t]he last known address of Craig Ballantyne and Stuart Lowther." As MuscleTech again failed to provide this information, by letter dated November 9, 2005, Plaintiff again requested that MuscleTech produce such information.

17. In response, by letter dated November 21, 2005, MuscleTech finally provided the last known address for Mr. Ballantyne and Mr. Lowther. In addition, MuscleTech informed Plaintiff that both Mr. Ballantyne and Mr. Lowther were represented by counsel. However, MuscleTech only provided the contact information for Mr. Lowther's attorney.

18. Given the above, by letter dated November 23, 2005, and email dated December 8, 2005 (Exh. K), Plaintiff demanded MuscleTech to provide the contact information for Mr. Ballantyne's counsel.

19. To date, MuscleTech has not provided such additional information.

**C. MUSCLETECH'S FAILURE TO PROVIDE THE ADVERTISING COSTS AND COSTS FOR CLINICAL STUDIES FOR THE YEARS 2000 TO THE PRESENT FOR THE NITRO-TECH PRODUCT SPECIFICALLY, AND FOR ALL MUSCLETECH PRODUCTS**

20. Pursuant to Plaintiff's Document Request No. 9, Plaintiff requested that MuscleTech produce "[a] complete copy of any files you maintain, have in your custody or possession or have access to concerning the marketing , advertising, or promotion of NitroTech." While MuscleTech noted its objection to the Document Request on the grounds that it was "overbroad, unduly burdensome, irrelevant, and [] not reasonably calculated to lead to discovery", MuscleTech stated that it would produce responsive documents.

21. Pursuant to Plaintiff's Interrogatory No. 15, Plaintiff requested that MuscleTech "identify all clinical studies, which tested the actual NitroTech product, including: (a) all supporting or underlying information, data and records that relate in any way to any of the above mentioned clinical studies; and (b) any payments made by MuscleTech as a result of or in connection with any such study." In response, MuscleTech stated that it would produce responsive documents in conjunction with its production of documents.[2]

22. Despite the fact that MuscleTech said it would produce such documents, during the deposition of Terry Begley, Plaintiff inquired of Mr. Begley regarding such information, and sought MuscleTech's production of "advertising costs from 2000

---

[2] In Plaintiff's Interrogatories to CFI, requested CFI produce information pertaining to tests of the Nitro-Tech product, and CFI stated that it would produce documents responsive to Plaintiff's Interrogatory.

to the present for Nitro-Tech and all products and then a cost for clinical studies for Nitro-Tech, 2000 to present, all products."

23. Such information and/or documents were not produced by MuscleTech following Mr. Begley's deposition, therefore, in addition to the letters of July 22, 2005, August 1, 2005, and September 7, 2005, by letter dated September 23, 2005, Plaintiff specifically reminded MuscleTech of its obligation to produce "[a]dvertising costs and costs for clinical studies for the years 2000 to present for the Nitro-Tech product specifically, and for all MuscleTech products."

24. Subsequently, as MuscleTech continued to avoid its discovery obligations, by email dated December 8, 2005, Plaintiff again demanded MuscleTech to provide the requested advertising and clinical trial costs.

25. To date, MuscleTech has not provided such documentation or information.

**D. <u>Defendants December 13, 2005 Document Production</u>**

26. By letter dated December 13, 2005, Defendants forwarded additional CFI documents to Plaintiff. Given the current discovery Order, this production occurred outside the deadline to produce discovery.

27. In spite of the production, several critical pieces of information were omitted. For instance, Document

12/13/05 Sup. CFI-003 is a report of an analysis by a lab in Cologne, Germany for possible steroid contamination of the Nitro-Product.[3] The report indicates that four samples were tested, two of the chocolate flavor and two of the vanilla flavor. However, the report indicates that the tests were negative as to two of the samples. No mention is made of the other two samples tested.

28. In regards to Document 12/13/05 Sup. CFI-0014, an e-mail between Defendants, dated February 25, 2002, on the lower half of the e-mail are handwritten notations, including an "asterisk" next to 4 androstenediol, 5 androstenediol, and 19 androstenediol with the indication "* found in supplement."[4] Neither the individual whose handwriting was contained on the document nor the actual source of the information were disclosed, however.

29. Similarly, document 12/13/05 Sup. CFI-0022 is a series of handwritten notes on paper with the heading "PerkinElmer Analytical Instruments." Contained within these notes is the comment "not in large enough quantity to help an athlete," and "need to [✓] supply chain of raws."[5] Again,

---

[3] Presumably, CFI produced the results of this test, at least on a limited basis, pursuant to CFI's Answer to Plaintiff's Interrogatory 17.

[4] Presumably, CFI produced this email pursuant to CFI's Answer to Plaintiff's Interrogatory 20.

[5] It appears that CFI produced this information pursuant to CFI's Answers to Plaintiff's Interrogatories 16 and 17.

neither the individual whose handwriting was contained on the document nor the actual source of the information were disclosed.

30. This information was sent to Plaintiff literally at the end of discovery, despite the fact that CFI apparently had this information long ago.

31. Given these deficiencies, by letter dated December 19, 2005, Plaintiff requested that Defendants produce more specific information in regards to its untimely production. The late timing of the production, and the fact that motions are to be filed no later than December 30, 2005, necessitated the Court's intervention on this matter prior to a determination that Plaintiff's good faith efforts to resolve this issue with counsel were fruitless.

**E. PLAINTIFF'S MOTION TO COMPEL SHOULD BE GRANTED**

32. In light of the foregoing, Plaintiff respectfully submits that MuscleTech has repeatedly failed and refused to produce discovery in this matter, notwithstanding countless efforts by Plaintiff to obtain such discovery, and that MuscleTech should be compelled to produce such discovery.

**DECLARATION**

I, Brian J. Molloy, declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

Brian J. Molloy

Dated: December 22, 2005